JEAN KASEM, PRO SE
9915 Richardson Rd NW
Bremerton, WA 98311
PLAINTIFF, PRO SE

UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEAN KASEM, as surviving spouse and Personal Representative of the ESTATE of CASEY KASEM, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>Kerri Helen Kasem, an individual; Mike Kasem, an individual; Jamil Anis Aboulhosn, an individual; Julie Kasem Aboulhosn, an individual; Troy L. Martin, an individual; CATHOLIC HEALTH INITIATIVES, a Colorado corporation, d/b/a St Anthony Hospital and DOES 1 through 99, inclusive<br><br>Defendants. | CASE NO: C17- 5461DWC<br><br>**COMPLAINT FOR PERSONAL INJURIES - WRONGFUL DEATH; NEGLIGENCE AND FRAUD**<br><br>[Amount in controversy exceeds $75,000.00]<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

**COMES NOW**, Plaintiff, **JEAN KASEM**, in her capacity as Personal Representative of the **ESTATE of CASEY KASEM**, Deceased, and for causes of action against the above named Defendants, and each of them, states and alleges as follows:

**I. <u>PARTIES AND JURISDICTION</u>**

1.1     Plaintiff, **JEAN KASEM**, has been appointed the Personal Representative of the ESTATE of CASEY KASEM, Deceased. Plaintiff brings this action on behalf of the Estate for the survival claim and wrongful death of Casey Kasem, Deceased in the State of Washington on June 15, 2014, pursuant to RCW 4.20 *et seq.*, and 28 US <u>Civil Code</u> Section 1332.

1.2     Jurisdiction is based on the Diversity of Jurisdiction of Defendants who are non-residents of the State of Washington and in which the amount in controversy exceeds $75,000.

1.3     Plaintiff is informed and believes Defendant KERRI HELEN KASEM, resides at 5100 Tobias Avenue, Sherman Oaks, CA 91403 United States, TELEPHONE: (818) 605-9090.

1.4     Plaintiff is informed and believes Defendant MIKE KASEM, resides at Andrew Road, 4th floor, Singapore 299939, TELEPHONE: + (65) 8468 2884, Tel: + (65) 6333 3888.

1.5     Plaintiff is informed and believes Defendant JAMIL ANIS ABOULHOSN, resides at 9438 Bianca Avenue, Northridge, CA 91325, United States, TELEPHONE: (310) 291-2058

1.6     Plaintiff is informed and believes Defendant JULIE KASEM ABOULHOSN resides at 9438 Bianca Avenue, Northridge, CA 91325, TELEPHONE: (310) 383-4603.

1.7     Plaintiff is informed and believes Defendant TROY L. MARTIN resides at 20715 Tomlee Ave, Torrance, CA 90503, TELEPHONE: (310) 259-2323, Tel: (310) 540-2373.

1.8     Plaintiff is informed and believes Defendant CATHOLIC HEALTH INITIATIVES, is a Colorado corporation, d/b/a St Anthony Hospital with its principal place of business located at 98 Inverness Drive West Englewood, CO 80112, Tel: (303) 298-9100.

## II.  COUNT I - PERSONAL INIURIES

### DAMAGES FOR WRONGFUL DEATH, NEGLIGENCE AND FRAUD

### BACKGROUND FACTS COMMON TO ALL COUNTS

This case is about the Homicidal Guardianship scam of Casey Kasem.

1.      Defendants Julie Kasem Aboulhosn, husband Jamil Anis Aboulhosn, Kerri Helen Kasem and Mike Kasem, had Casey Kasem sign a Durable Power of Attorney for Health Care ("2007 DPA") on November 11, 2007, at a UPS store on Hollywood Blvd, under duress and undue influence, while Plaintiff's husband of 35 years, Casey Kasem, was without legal representation, recovering from surgery, under the influence of medications and other substances that causes

drowsiness and impairs judgement.

2. Defendants, Julie Kasem Aboulhosn, husband Jamil Anis Aboulhosn, Defendants Kerri Helen Kasem and Mike Kasem, who are the only named individuals in the 2007 DPA to act as Casey Kasem's agents, then actively concealed their fraudulent document for 6 years, never exercising it for its' purported intentional use for Casey Kasem's healthcare.

3. Defendants then surfaced with the 2007 DPA in October of 2013 and began a malicious and fraudulent media assault to prejudice Casey Kasem, (Plaintiff) Jean Kasem and daughter Liberty.

4. Defendants also made numerous false allegations to the Los Angeles Adult Protective Services ("LA APS") and the Police ("LAPD"), misusing both public agencies.

5. LA APS and LAPD representatives were incessantly called by Defendants numerous times and dispatched to Plaintiff's Los Angeles residence numerous times. Both agencies investigated the numerous false reports made by Defendants and never found any evidence of Defendants' fraudulent allegations. It was clear that Defendants were misusing these public services as a form of extreme harassment, media exploitation and prejudicial publicity against Plaintiff for their guardianship scheme of Casey Kasem.

6. Defendants then committed Fraud upon the Court by knowingly filing their fraudulent 2007 DPA for their first guardianship attempt of Casey Kasem.

7. The first guardianship attempt was then filed ex parte in the Los Angeles Superior Court, Case No. BP-145805, and the first hearing was on October 15, 2013.

8. On November 19, 2013, after an invasive and extensive court investigation, Defendants' petition for guardianship of Casey Kasem was "denied for no good cause" by the Hon. Lesley Green, as it was found that Casey Kasem was receiving "excellent care", and that the Advance Health Care Directive (that Casey Kasem's attorneys prepared) and that Casey Kasem signed in 2011 (in the presence of his attorneys), exclusively designated Jean Kasem, his wife, as

his sole exclusive agent for health care decisions, and governed.

9. LASC, Case No. BP-145805, was officially "denied with prejudice" and put to an end on January 14, 2014 by the Hon. Lesley Green. Case closed.

10. Four (4) months later in May, 2014, Defendants began the same assault with the same pattern of malicious conduct, against Plaintiff's family.

11. Defendants began to make numerous false reports to the LA APS, the LAPD and were again misusing these public services as a form of extreme harassment, media exploitation and prejudicial publicity against Plaintiff and initiated their second, Homicidal Guardianship of Casey Kasem.

12. A second fraudulent petition for guardianship of Casey Kasem was then filed ex parte in the Los Angeles Superior Court, Case No. BP-151879, before a different Judge (Daniel Murphy) and without conducting any court investigation to find the "clear and convincing evidence" required to appoint a "temporary" guardian by a Judge, a "temporary" guardianship of Plaintiff's husband Casey Kasem, issued within 5 minutes into the first hearing on May 12, 2014, while Plaintiff was with her husband Casey Kasem and their daughter Liberty, in Washington State.

13. Judge Murphy showed no deference to the prior ruling by Judge Lesley Green, who "denied" the first fraudulent petition "for no good cause" on November 19, 2013 and finally "denied with prejudice" on January 14, 2014.

14. On May 13, 2014, Washington Sheriffs unexpectedly arrived at Plaintiff's host family's residence in Silverdale, WA, as another false report was made by Defendants. Defendants' close contact, Sasha Lala, (who works for the Los Angeles APS) dispatched the Washington Sheriffs to the residence where Plaintiff and Casey Kasem were staying.

15. After Defendants knew of this location in Silverdale, WA, Defendants proceeded to file a false missing person report of Casey Kasem, causing a needless nationwide manhunt.

16. On May 14, 2014, LA APS, Sasha Lala, contacted Jennifer Rixe of the Washington

Adult Protective Services ("WA APS") and WA APS and WA Sheriffs unexpectedly arrived at the host family's residence again.

17. WA APS and WA Sheriffs found no evidence of the Defendants' fraudulent allegations.

18. LA APS, Sasha Lala, still requested that Washington State Sheriffs forcefully transport Casey Kasem against his will to the ER at Harrison Medical, which was a block away from the Plaintiff's host family's residence. The Washington State Sheriffs found no valid reason to forcefully transport Casey Kasem to the ER.

19. On May 15, 2014, WA Deputy Sheriff, Scott Wilson, held a press conference and informed the public that Casey Kasem was not a missing person, doing fine and closed their investigation (which was induced by Defendants making another false APS and Police report).

20. Plaintiff then immediately sought legal representation for Casey Kasem and herself. Plaintiff hired Washington attorneys Joel Paget, Roger Sherrard and Gerald Treacy to defend Plaintiff and her husband, Casey Kasem.

21. On May 21, 2014, Plaintiff's daughter Liberty, Casey Kasem's PCP, Dr. Donald Sharman, their attorneys Roger Sherrard and Gerald Treacy, all held a press conference at Liberty Lake in Poulsbo, WA to quell the media frenzy that had been initiated once again by Defendants.

22. On May 22, 2014, the court appointed attorney in Los Angeles, Sam Ingham (the same one from both the first and second Guardianship scam proceedings) called and threatened Plaintiff and Casey Kasem's attorneys, Sherrard and Treacy, to cease representing Casey Kasem.

23. Casey Kasem had his own legal representation in Washington State and the Los Angeles court appointed attorney Sam Ingham, (who threatened Casey Kasem's Washington State attorneys), deprived Casey Kasem of his Constitutional and Natural Rights to Due Process of Law, leaving Casey Kasem unrepresented by counsel in the State of Washington. Sam Ingham never even flew to Washington State to defend his so-called client.

24. On May 23, 2014, Defendants fraudulently obtained California 'temporary" Guardianship papers were registered in Washington State through the UAGPPJ Act, which was apparently the very first out-of-state "temporary" Guardianship registered in Washington, through this Act. Defendants then filed for a hearing in Washington State.

25. On May 30, 2014, at the first hearing in Kitsap County Superior Court, Case No. 14-4-00374-8, Defendant Kerri Helen Kasem persuaded Judge Jennifer Forbes to allow for a supposed "independent medical evaluation" of Casey Kasem to take place at a hospital, rather than agreeing for an independent Doctor to make a house call.

26. On June 1, 2014, Defendant Kerri Helen Kasem arrived at Plaintiff's host family's residence to pick up Casey Kasem and took him to a hospital far away and in a different county, when there was a hospital one block away (Harrison Medical) from Plaintiff's host family's residence, which is also owned and operated by the same medical group, CHI Franciscan. Defendant Kerri Helen Kasem was supposed to return Casey Kasem back to his wife, Plaintiff, Jean Kasem, after the supposed medical evaluation.

27. Casey Kasem was accompanied by his own PCP, Dr. Donald Sharman, to St Anthony Hospital for the supposed medical evaluation. Dr. Joseph Regimbal was the doctor who examined Casey Kasem on June 1, 2014.

28. Approximately 4 hours after the supposed medical evaluation of Casey Kasem had concluded at St Anthony Hospital, Casey Kasem was cleared by Dr. Joseph Regimbal to return to the care he was receiving. Dr. Joseph Regimbal included in his report, "His [Casey Kasem's] current care plan and management in his current home has been appropriate today, Dr. Sharman's recommendations and availability have been excellent and timely".

29. Defendant, Kerri Helen Kasem never returned Casey Kasem after the June 1, 2014 evaluation. Instead, Defendant, Kerri Helen Kasem kept Casey Kasem entrapped in St Anthony Hospital, when there was "no medical basis for doing so". Casey Kasem was then kept at St Anthony Hospital for an unauthorized "overnight observation".

30. On June 2, 2014, at the second hearing in KCSC, Case No. 14-4-00374-8, after Judge Jennifer Forbes read Dr. Joseph Regimbal's medical evaluation report of Casey Kasem on court transcript and found no compelling reason to keep him in the hospital, Judge Forbes authorized that Casey Kasem be returned back to his wife (Plaintiff) after Casey Kasem's PCP, Dr. Donald Sharman, also agreed with the Doctor at St Anthony Hospital that it was safe to do so.

31. Shortly after the second court hearing of June 2, 2014, Casey Kasem's PCP, Dr. Sharman and Plaintiff, Jean Kasem, called St. Anthony Hospital and spoke with Dr. Ramon Basa.

32. Dr. Ramon Basa informed Dr. Sharman and Plaintiff Jean Kasem, that "Casey Kasem's medical evaluation had concluded and his overnight observation went well, he is discharged and you can come pick him up".

33. Plaintiff Jean Kasem went to St Anthony Hospital with Casey Kasem's Nurse Shasta Bartelheim and one of her Washington State attorneys, Steven Olsen, with medical transport and met Dr. Sharman at the hospital.

34. On the afternoon of June 2, 2014, when Plaintiff Jean Kasem, Nurse Shasta Bartelheim, and one of Plaintiff's Washington State attorneys, Steven Olsen all arrived at St Anthony Hospital, Casey Kasem's discharge was being deliberately delayed.

35. After quite some time, Dr. Ramon Basa, a St Anthony Hospital administrator, Washington State attorney Scott Winship, all entered the room where Plaintiff and Nurse Shasta Bartelheim, and one of Plaintiff's Washington State attorneys, Steven Olsen were all waiting.

36. Dr. Ramon Basa was all of sudden saying that Casey Kasem would not be discharged.

37. Dr. Sharman asked Dr. Basa why they were keeping Casey Kasem in St. Anthony Hospital and Dr. Basa could not explain to Dr. Sharman why he changed his mind.

38. Plaintiff proceeded to put her lead Washington attorney Joel Paget on speaker phone.

39. Washington State attorney Scott Winship yelled at Plaintiff's Washington state attorney Joel Paget, "<u>Casey is not leaving the hospital period!</u>" and hung up on Plaintiff's

Washington attorney, Joel Paget.

40. The next day, Plaintiff was informed that Defendants, using their fraudulent 2007 DPA, unilaterally and immediately began withholding Casey Kasem's hydration, nutrition and all proactive medical care.

41. On June 4, 2014, Plaintiff Jean Kasem and her [their] daughter Liberty tried to see her husband, and Liberty's father, Casey Kasem at St Anthony Hospital and without explanation, were told that they [Plaintiff Jean Kasem and Liberty] were banned from entering the hospital.

42. On June 6, 2014, Plaintiff Jean Kasem and her daughter Liberty were called to St Anthony Hospital. When they arrived, they were met by Nurse John Reeder, who informed them that they "had already begun the process" of withdrawing and withholding Casey Kasem's hydration, nutrition and all proactive medical care, without any consent from Plaintiff Jean Kasem, and without authorization by WA Judge Jennifer Forbes.

43. That late Friday evening, Plaintiff Jean Kasem and daughter Liberty were only permitted approximately 5 minutes to see Casey Kasem, Plaintiff's husband of 35 years and Liberty's father, before they were quickly escorted out of Casey Kasem's room and out of the hospital chapel.

44. Plaintiff Jean Kasem and Liberty never saw Casey Kasem alive again.

**WHEREFORE**, the Plaintiff prays for judgment against the Defendants, jointly and severally, as follows:

1. For all damages sustained by the plaintiff, including the Estate, in amounts proven at trial, including without limitation, all past and future economic and non-economic damages allowed by RCW 4.20 *et seq.* and the common law; including the loss of the accumulation of income, incurred medical, funeral, and burial expenses, loss of consortium, destruction of the spousal relationship, and the conscious pain, suffering, anxiety and fear of impending death experienced by the decedent;

2. Interest calculated at the maximum amount allowable by law, including pre and post-judgment interest;

3. A reasonable attorney's fee as allowed by law;

4. Costs and disbursements pursuant to statute; and

5. Other and further relief as this Court may deem just and equitable.

Dated: JUNE 14, 2017      Respectfully submitted,

/s/ Jean Kasem
**JEAN KASEM, as surviving spouse and Personal Representative of the ESTATE of CASEY KASEM, Deceased.**

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury Trial on all issues in this action.

Dated: June 14, 2017      /s/ Jean Kasem
**JEAN KASEM, as surviving spouse and Personal Representative of the ESTATE of CASEY KASEM, Deceased.**