UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JEAN KASEM,<br><br>              Plaintiff,<br><br>   v.<br><br>KERRI HELEN KASEM, et al.,<br><br>              Defendants. | CASE NO. C17-5461 BHS<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR CONTINUANCE AS MOOT |

This matter comes before the Court on the combined motion to dismiss and motion for summary judgment of Defendant Catholic Health Initiatives ("CHI"). Dkt. 31. Also before the Court is Plaintiff Jean Kasem's ("Jean") motion for a continuance of CHI's summary judgment motion. Dkt. 34. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby rules as follows:

## I. PROCEDURAL HISTORY

On June 15, 2017, Jean filed her complaint in this case as the surviving spouse of Casey Kasem ("Casey") and the personal representative of Casey's estate. Dkt. 1. Jean

brought claims for negligence, fraud, and the wrongful death of Casey[1] against CHI and individually named defendants Kerri Kasem, Mike Kasem, Jamil Aboulhosn, Julie Aboulhosn, and Troy Martin. *Id.* Jean claimed her lawsuit satisfied the diversity jurisdiction requirements of 28 U.S.C. § 1332.

On October 3, 2017, the individual defendants moved for dismissal based on lack of subject matter jurisdiction. Dkt. 12. Because Casey, Jean (as the personal representative of Casey's estate), and all of the individual defendants in this action were citizens of California, there was no diversity jurisdiction under 28 U.S.C. § 1332. *See id.* On October 30, 2017, Jean filed a motion to voluntarily dismiss the individually named defendants. Dkt. 24. On November 8, 2017, the Court granted the motion and dismissed the individually named defendants. Dkt. 28. Because the individually named defendants were dismissed and CHI is a Colorado corporation, the diversity of citizenship requirements under 28 U.S.C. § 1332 are presumably satisfied for Plaintiff's remaining claims against CHI.[2]

On February 14, 2018, CHI filed its combined motion to dismiss and motion for summary judgment. Dkt. 31. CHI moves for dismissal on the basis that Jean has failed to allege any conduct on the part of CHI that constitutes negligence or some other tort. *Id.*

---

[1] Jean does not specify in her complaint what claims she is asserting against what defendants, which creates a presumption that she asserts all of the listed legal claims against each of the defendants.

[2] The Court dismissed CHI's motion joining in the individually named defendants' motion to dismiss because the individual defendants' motion was rendered moot by Jean's own voluntary dismissal. Accordingly, the Court has not considered the issue of joining Franciscan Health Systems, a Washington corporation as a necessary party, an issue touched upon in CHI's previous motion. *See* Dkt. 16.

Alternatively, CHI moves for summary judgment on the basis that Jean cannot support her wrongful death or negligence claims with expert testimony to establish a breach of the applicable professional standard of care or causation of any alleged damages. *Id.*

On March 5, 2018, Jean responded to CHI's motion to dismiss and moved to continue CHI's summary judgment motion pursuant to Rule 56(d). Dkt. 34. In regards to CHI's motion to dismiss, Jean argues that the complaint alleges sufficient facts "that if accepted as true . . . demonstrate that [CHI]'s actions contributed to a scheme that resulted in the death of Mr. Casey Kasem." *Id.* at 2. In response to CHI's motion for summary judgment, Jean seeks a Rule 56(d) continuance to conduct discovery and obtain an expert opinion supporting a theory that CHI negligently contributed to Casey's death. *Id.* at 3–4.

On March 9, 2018, CHI replied. Dkt. 36.

## II. FACTUAL BACKGROUND[3]

On May 30, 2014, Kitsap County Superior Court issued an order requiring an independent medical evaluation of Casey, age 82, at a hospital. Dkt. 1 at 6. On June 1, 2014, Casey was taken from the place he was residing with Jean and evaluated at St. Anthony's Hospital located in Gig Harbor, WA, which is owned and operated by CHI. *Id.* At the hospital, Casey was examined by Dr. Joseph Regimbal. *Id.* Casey was

---

[3] The factual background set out in this order relies exclusively on the allegations of Jean's complaint. CHI contests the veracity of many of these allegations, which it argues are "patently incorrect" as demonstrated by applicable medical records. *See* Dkt. 31 at 5 n.6. However, for the purpose of CHI's motion to dismiss, the Court must accept the allegations in Jean's complaint as true.

accompanied by his daughter, Kerri Helen Kasem ("Kerri"), and his own personal care provider, Dr. Donald Sharman. *Id.*

The Kitsap County Superior Court's order was entered as the result of a dispute between Jean and Kerri (along with her siblings from Casey's previous marriage) in regards to the care and guardianship of Casey. Previously, on May 12, 2014, a California court had entered an order assigning Kerri and her siblings as Casey's guardians and legal health care decision-makers. *Id.* at 4. Kerri was appointed guardian pursuant to her purported authority under a "Durable Power of Attorney for Health Care," ("DPA") executed by Casey in 2007. *Id.* Also, Kerri and her siblings purportedly "made numerous false allegations to the Los Angeles Adult Protective Services and the Police" that Jean was mistreating Casey. *Id.* at 3. Jean claims that the DPA was fraudulently obtained, but her complaint states that the California court nonetheless appointed Kerri and her siblings as guardians of Casey.

After four hours of evaluation, Dr. Regimbal cleared Casey to return to the in-home care he was receiving from Dr. Sharman, where he was living with Jean. *Id.* However, Kerri requested that Casey remain at the hospital for an overnight observation. *Id.* The overnight observation was not necessary, but it was allowed by the hospital. *Id.* Kerri was acting as Casey's guardian and legal decision-maker pursuant to the above-mentioned California court decision. *Id.* at 4, 6.

On June 2, 2014, Kitsap County Superior Court entered an order authorizing Casey to be released from the hospital. *Id.* at 7. After the Kitsap County Court entered the order, Jean called St. Anthony's Hospital and spoke with Dr. Ramon Basa. *Id.* Dr. Basa

informed Jean that the overnight observation went well and that she could come to the hospital to take Casey back to the house where he and Jean were staying. *Id.*

When Jean arrived at the hospital with a medical transport (accompanied by her attorney and an in-home care nurse), she was met by Dr. Basa, an unidentified hospital administrator, and attorney Scott Winship. *Id.* Dr. Basa informed Jean that Casey would not be discharged after all. *Id.* When Dr. Sharman asked Dr. Basa why he had changed his mind, Dr. Basa could not answer. *Id.* However, Scott Winship "yelled" at Jean's lead attorney, who was communicating via speakerphone on Jean's cellphone, "Casey is not leaving the hospital, period." *Id.*

On June 3, 2014, Jean was informed that Kerri had implemented her authority under the DPA to cease proactive life-saving measures. *Id.* at 8.

On June 4, 2018, Jean attempted to visit Casey at the hospital. *Id.* She was not allowed to see Casey and was prevented from entering the hospital. *Id.* at 8.

On June 6, 2018, Jean was called to visit Casey. *Id.* Nurse John Reeder informed Jean that the hospital had already begun the process of ceasing Casey's proactive medical care pursuant to Kerri's authority under the DPA. *Id.* Jean was permitted to visit Casey for approximately five minutes. *Id.* Jean did not visit again.

On June 15, 2014, Casey died at the hospital.

### III. DISCUSSION

**A.    Motion to Dismiss**

CHI moves to dismiss Jean's complaint pursuant to Rule 12(b)(6) on the basis that Jean has failed to specify any wrongful conduct on the part of CHI. *See* Dkt. 31 at 6–9.

Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir. 1983). To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1965 (2007). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

The complaint contains a heading titled: "Count I-Personal Injuries Damages for Wrongful Death, Negligence and Fraud Background Facts Common to All Counts." Dkt. 1 at 2. Because the ensuing factual allegations fail to specify what facts pertain to which claims, or what claims pertain to which defendants, CHI and the Court are left to presume that Jean asserts claims for fraud, negligence, and wrongful death against each of the defendants, including CHI.

**1.    Fraud Claim**

Jean has failed to allege facts to support a viable claim of fraud against CHI. Beyond the general pleading standards articulated in Rule 8, Rule 9(b) imposes a heightened pleading standard for claims of fraud, stating: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Jean has alleged the 2007 DPA was fraudulently obtained, but Jean

has not alleged any conduct by CHI in perpetrating this purported fraud. Additionally, there are no allegations to support a position that CHI ever made a false representation of existing facts at any time. To the extent Jean might have been able to argue that CHI falsely represented that Kerri was the legal decision-maker of Casey, Jean has failed to allege such circumstances with sufficient particularity. Nor has Jean alleged facts to suggest that CHI knew or should have known that the DPA was fraudulently obtained. Accordingly, any fraud claim that Jean may assert against CHI is dismissed.

### 2. Negligence and Wrongful Death Claim

While Jean has referenced "negligence" and "wrongful death," Jean has made clear that these constitute a single claim against CHI. Specifically, Jean has stated in her response to the motion to dismiss that if CHI "had not delayed [Casey]'s release from the hospital when his wife Jean and her attorneys tried to intervene . . . on June 2, 2014, it would not have been possible to carry out the plan to take his life." Dkt. 34. Jean continues to argue that CHI should have permitted Jean to make decisions related to Casey's health, but instead prevented her from entering the hospital. *Id.*

However, the allegations in the complaint show the lack of a cognizable legal theory against CHI for the wrongful death of Casey. The complaint makes clear that CHI was acting pursuant to the directions of Kerri. The complaint also explains that Kerri had been appointed guardian of Casey and that she was acting as his legal health care decision-maker under the DPA. While Jean has argued that the DPA was fraudulently obtained, Jean has failed to offer any facts suggesting that CHI acted wrongfully in failing to disregard a court's legal decision appointing Kerri and her siblings as Casey's

guardian pursuant to the DPA. Nor has Jean alleged any facts suggesting that the medical decision to withdraw proactive care fell below an applicable standard of care. While Jean contends that no court had approved the decision to withdraw proactive medical care, she fails to articulate how this could have negated Kerri's authority to make Casey's healthcare decisions or, more importantly, how CHI could have known that Kerri lacked such authority, particularly in light of her court-ordered status as Casey's guardian. In short, Jean has failed to allege any facts to support a theory that CHI breached any legal duty to Casey or Jean, and the wrongful death and negligence claim against CHI must be dismissed.

The closest Jean comes to stating a plausible theory is her allegation that the Kitsap County Superior Court "authorized that Casey Kasem be returned back to [Jean]" on June 2, 2014. Dkt. 1 at 7. This suggests a possibility that there may have been a court order that should have led the hospital to disregard Kerri's asserted authority to act as Casey's health care decision-maker. However, this allegation is insufficient to state a plausible claim that the hospital disregarded any instructions from the Kitsap County Superior Court, as there are no allegations that the "authorization" from the Kitsap County Superior Court (1) actually *directed* the hospital to release Kasey to Jean, (2) rescinded, negated, or otherwise called into doubt Kerri's legal authority to act as Casey's health care decision-maker, or (3) was ever presented to the hospital. Because such allegations could possibly be suppled if Jean is given an opportunity to cure the present pleading deficiency, the Court will grant Plaintiff leave to file an amended complaint. *See*

Fed. R. Civ. P. 15(a)(2) (The Court should freely give leave [to amend] when justice so requires.").

B.  **Motion for Summary Judgment**

Because Jean has failed to state a viable claim against CHI, the Court need not consider CHI's motion for summary judgment or Jean's motion for a Rule 56(d) continuance. Those motions are therefore denied as moot.

### IV.  ORDER

Therefore, it is hereby **ORDERED** that CHI's motion to dismiss (Dkt. 31) is **GRANTED** and the claims against CHI are **DISMISSED**. CHI's motion for summary judgment and Jean's motion for a continuance are **DENIED** as moot.

Jean is **GRANTED LEAVE TO AMEND** her complaint. An amended complaint may be filed no later than April 20, 2018. Failure to file an amended complaint by this deadline shall result in the Clerk entering a judgment and final order of dismissal without further order from this Court.

Dated this 4th day of April, 2018.

BENJAMIN H. SETTLE
United States District Judge