UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JEAN KASEM,<br><br>                Plaintiff,<br><br>    v.<br><br>CATHOLIC HEALTH INITIATIVES, a Colorado corporation doing business as St. Anthony Hospital,<br><br>                Defendant. | CASE NO. C17-5461 BHS<br><br>ORDER GRANTING DEEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant Catholic Health Initiative's ("CHI") motion for summary judgment (Dkt. 42). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On June 15, 2017, Jean Kasem ("Jean")[1] filed her complaint in this case as the surviving spouse of Casey Kasem ("Casey") and the personal representative of his estate. Dkt. 1. Jean brought claims for negligence, fraud, and the wrongful death of Casey

---

[1] The Court refers to the individual parties, many of whom share the last name Kasem, by first name. The Court does this for clarity.

against CHI and individually named defendants Kerri Kasem, Mike Kasem, Jamil Aboulhosn, Julie Aboulhosn, and Troy Martin. *Id.*

On October 30, 2017, Jean filed a motion to voluntarily dismiss the individually named defendants. Dkt. 24. On November 8, 2017, the Court granted the motion and dismissed those defendants. Dkt. 28. CHI is thus the sole remaining defendant.

On February 14, 2018, CHI filed a motion to dismiss and a motion for summary judgment. Dkt. 31.[2] CHI moved for dismissal on the basis that Jean failed to allege any conduct on the part of CHI that constitutes negligence or some other tort. *Id.* Alternatively, CHI moved for summary judgment on the basis that Jean could not support her wrongful death or negligence claims with expert testimony to establish a breach of the applicable professional standard of care or causation of any alleged damages. *Id.*

On March 5, 2018, Jean responded to CHI's motion to dismiss and moved to stay CHI's first summary judgment motion pursuant to Rule 56(d). Dkt. 34. Jean sought the stay of summary judgment so that she could conduct discovery and obtain an expert opinion supporting a theory that CHI negligently contributed to Casey's death. *Id.* at 3–4.

On April 4, 2018, the Court granted CHI's motion to dismiss. Dkt. 38. The Court issued a detailed order laying out its reasoning as to why Jean failed to state a claim for fraud, negligence and/or wrongful death.[3] *Id.* The Court then granted Jean leave to amend

---

[2] *See* Fed. R. Civ. P. 12(d) (when a motion to dismiss includes matters outside the pleadings, the motion is converted to one for summary judgment).

[3] While Jean discusses theories of wrongful death and negligence, the Court has previously found that these constituted a single claim. Dkt. 38, 7:9-15.

her complaint by April 20, 2018. *Id.* Given the Court's ruling on the motion to dismiss, Jean's Rule 56(d) motion to stay summary judgment was denied as moot. Dkt. 38. On April 20, 2018, Jean filed her first amended complaint ("FAC"). Dkt. 39. Jean limited her claims in the FAC to wrongful death and loss of care and companionship. *Id.*

On July 5, 2018, CHI filed another motion for summary judgment, noting it for consideration on July 27, 2018. Dkt. 42. CHI moves for summary judgment on the basis that it has disproved all of Jean's material allegations, and in the alternative, that Jean cannot support her wrongful death or negligence claims with expert testimony, either to establish a breach of the applicable professional standard of care or causation of any alleged damages. *Id.* On July 24, 2018, CHI renoted its motion for a later date at plaintiff counsel's request, providing a new consideration date of August 3, 2018. Dkt. 44; Dkt. 47, ¶ 3.

On July 30, 2018, Jean timely responded, arguing that she was entitled to have the allegations reviewed in the light most favorable to her and that CHI had not met its burden on the motion. Dkt. 45, ¶ A. In the alternative, Jean sought another Rule 56(d) continuance so that she may conduct discovery and obtain an expert opinion. Dkt. 45, ¶ B. Jean included her Rule 56(d) argument within the text of her response to CHI's motion, *id.*, and did not file any other documents supporting her response.

On August 3, 2018, CHI replied. Dkt. 46. CHI supplemented its briefing with sworn declarations and exhibits. *See, e.g.*, Dkts. 33, 43, 47.

## II. FACTUAL BACKGROUND

This case arises out of allegations surrounding the medical care Casey Kasem received from CHI during the final days of his life. Jean was Casey's spouse of thirty-five years.

On May 30, 2014, Kitsap County Superior Court ("Kitsap Court") issued an order requiring an independent medical evaluation of Casey, age 82, at a hospital. Dkt. 39, ¶ 17. On June 1, 2014, Casey was taken from the place where he was residing with his wife Jean. *Id.* ¶ 18. Casey was transported to St. Anthony's Hospital in Gig Harbor, WA, which is owned and operated by CHI. *Id.* At the hospital, Casey was examined by Dr. Joseph Regimbal. *Id.* ¶¶ 22–23. Casey was accompanied by his daughter, Kerri H. Kasem ("Kerri"), and his own personal care provider, Dr. Donald Sharman. *Id.* ¶¶ 21, 25.

The Kitsap Court order was entered as the result of a dispute between Jean and Kerri (along with her siblings from Casey's previous marriage) in regards to the care and guardianship of Casey. *Id.* ¶¶ 6–7. Previously, on May 12, 2014, a California court had entered an order assigning Kerri and her siblings as Casey's guardians and legal health care decision-makers. *Id.* ¶ 13. Kerri was appointed guardian pursuant to her purported authority under a "Durable Power of Attorney for Health Care," ("DPA") executed by Casey in 2007. *Id.* ¶¶ 4, 13. Also, Kerri and her siblings purportedly made numerous false allegations to convince authorities that Jean was mistreating Casey. *Id.* ¶¶ 7, 8, 12. Jean claims that the DPA was fraudulently obtained, *id.* ¶ 4, but her complaint states that the California court nonetheless appointed Kerri and her siblings as guardians of Casey. *Id.* ¶ 13. Kerri accompanied Casey to St. Anthony's hospital in this capacity on June 1, 2014.

At St. Anthony's, after four hours of evaluation, Dr. Regimbal cleared Casey to return to the in-home care he was receiving from Dr. Sharman at the residence where he was living with Jean. *Id.* ¶ 24. However, Kerri requested that Casey remain at the hospital for an overnight observation. *Id.* ¶ 25. The overnight observation was not necessary, but it was allowed by the hospital. *Id.* Kerri was acting as Casey's guardian and legal decision-maker pursuant to the California court decision. *Id.* ¶¶ 13, 16, 17.

On June 2, 2014, Kitsap Court entered an order authorizing Casey to be released from the hospital. *Id.* ¶ 26. After the Kitsap Court entered the order, Jean called St. Anthony's Hospital and spoke with Dr. Ramon Basa. *Id.* ¶ 27. Jean declares that Dr. Basa informed her that the overnight observation went well and that she could come to the hospital to take Casey back to the house where he and Jean were staying. *Id.*

When Jean arrived at the hospital with a medical transport (accompanied by her attorney and an in-home care nurse), she was met by Dr. Basa. *Id.* ¶¶ 28–29. Dr. Basa informed Jean that Casey would not be discharged after all. *Id.* ¶ 29. When asked why he had changed his mind so rapidly, Dr. Basa provided no explanation. *Id.* However, Dr. Basa denies ever telling Jean or Dr. Sharman that Casey was cleared for release on June 2, 2014. Dkt. 43, Ex. B, Deposition of Dr. Ramon Basa, 17:1–4, 20:25–21:6.[4]

Jean, her attorney, Dr. Sharman, Dr. Basa, Casey's nurse, and two of CHI's administrators then had a meeting. Dkt. 39, ¶ 30. Jean's lead attorney, Joel Paget, also participated in the meeting via speakerphone. *Id.* During this meeting, Mr. Paget

---

[4] Unless otherwise noted, the Court refers to the electronic case file pagination, which is a header added to all documents electronically filed with the Court.

informed CHI that the Kitsap Court had determined that there was no medical basis to hold Casey at St. Anthony's, per the order it had issued earlier that day. *Id.* ¶ 31. CHI did not release Casey. *Id.* ¶ 33.

CHI later filed the Kitsap Court order from June 2, 2018. Dkt. 43, Ex. E, Order re AIP's Location. As CHI points out in its briefing, the handwritten court document actually orders that:

> Mr. Kasem's doctors shall direct his care. Absent new medical information requiring Mr. Kasem's continued hospitalization, in his doctor's @ **St. Anthony** [sic] opinion, Mr. Kasem shall be returned to Silverdale.

*Id.* (emphasis added).

Casey was not returned to Silverdale because, in the opinion of CHI's St. Anthony doctors, it was medically necessary to keep him hospitalized. Dkt. 43, Ex. B, Dep. of Dr. Basa, 38:19–39:6. CHI's doctors decided this after observing Casey's need for intravenous morphine doses to manage pain. *Id.* Additionally, Kerri had been appointed as Casey's temporary conservator by a May 13, 2014 order in the California guardianship case. Dkt. 43, Ex. F, Order Creating Temporary Conservator. This order remained in effect while Casey was hospitalized at St. Anthony's on June 2, 2014.

On June 3, 2014, Jean was informed that Kerri had implemented her authority under the DPA to cease proactive life-saving measures. *Id.* ¶ 34. On June 4, 2014, Jean attempted to visit Casey at the hospital. *Id.* ¶ 35. Jean alleges that she was not allowed to see Casey and was prevented from entering the hospital. *Id.* On June 6, 2014, someone at St. Anthony's called Jean to visit Casey. *Id.* ¶ 36. Nurse John Reeder informed Jean that

the hospital had already begun the process of ceasing Casey's proactive medical care, hydration and nutrition pursuant to Kerri's authority under the DPA. *Id.* Jean was permitted to visit Casey for approximately five minutes. *Id.* ¶ 38. Jean never visited again. *Id.* ¶ 39. On June 15, 2014, Casey died at St. Anthony's hospital. *Id.* ¶ 46.

### III. DISCUSSION

**A.      Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc*., 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.    Merits of Summary Judgment**

Summary judgment is proper in this case because Jean has not made a sufficient factual showing to support essential elements of her wrongful death claim. CHI is entitled to judgment as a matter of law because the record, as developed, would not allow any rational juror to find for Jean. *Matsushita*, 475 U.S. at 587.

Under settled principles of summary judgment, once the moving party carries its initial burden under Rule 56(c), the nonmoving party may no longer rely on mere allegations in the pleadings. *T.W. Elec. Serv., Inc*., 809 F.2d at 630 (citing *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289 & n.19). Instead, the nonmoving party must produce "significant probative evidence" tending to support its claims. *Cities Serv. Co.*, 391 U.S. at 290; Fed. R. Civ. P. 56(c).

Here, Jean relies solely on the allegations contained in her FAC, but asks the Court to deny summary judgment based on internal discrepancies within the depositions of CHI's treating doctors, arguing that this creates a genuine dispute of material fact. Jean is

incorrect. The sworn testimony submitted by CHI through the depositions of Dr. Basa, Dr. Regimbal, Dr. Grover, and Dr. Iregui (Dkt. 43, Exhs. A, B, C, and D) conclusively rebut Jean's allegations that: (1) CHI wrongfully held Casey at the hospital without medical necessity; (2) CHI ignored legal authority that authorized Casey's release to Jean; (3) CHI fell below the standard of professional care in its decision to withhold the lifesaving measures of artificial hydration, nutrition, and proactive medical support from Casey; and (4) CHI acted upon Kerri's unilateral decision-making when it withheld lifesaving measures. CHI has rebutted Jean's material allegations with evidence, meeting its burden on a motion for summary judgment.

Once CHI submitted sufficient evidence to rebut Jean's material allegations, Jean bears the burden to "go beyond the pleadings" and produce probative evidence in support of her claims. *Celotex*, 477 U.S. at 324. Jean fails to meet her burden because she failed to produce any evidence, such as declarations, depositions, affidavits, admissions, answers to interrogatories, court orders, or other documents, in opposition. Jean continues to rely on the mere allegations in her FAC. Given that CHI's assertions are based on sworn testimony from Casey's treating doctors and legal documents rebutting Jean's claims, Jean's allegations are akin to "metaphysical doubts," *Matsushita*, 475 U.S. at 586, and when considered alone, are insufficient to survive summary judgment.

Second, Jean has not produced an expert opining that CHI's treatment fell below the applicable standard of professional care when it withheld artificial hydration and nutrition and proactive care from Casey. Nor has Jean produced an expert connecting CHI's alleged breach to her damages. CHI, on the other hand, provided an expert

declaration opining that CHI's treatment of Casey was "completely appropriate and within the standard of care." Dkt. 33, Declaration of Curtis Veal, M.D., ¶ 10. Because Jean relies only on her FAC and did not produce an expert to support her theory that CHI negligently contributed to her husband's death, Jean fails to provide sufficient proof of essential elements of her claim. *Celotex*, 477 U.S. at 323 (1986). In other words, Jean cannot rebut with speculation what CHI establishes with admissible evidence.

Therefore, the remaining question is whether the Court should grant CHI's motion, or defer ruling on the motion so that Jean may complete discovery.

## C. Deferred Ruling

Jean asks the Court to stay its ruling on summary judgment, reasoning that any such ruling is premature because discovery is not yet complete. Rule 56(d) authorizes district courts to defer considering a motion for summary judgment or deny it if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition . . ." Fed. R. Civ. P. 56(d).[5]

In ruling on a 56(d) motion, a district court considers: (1) whether the movant had sufficient opportunity to conduct discovery; (2) whether the movant was diligent; (3) whether the information sought is based on mere speculation; and (4) whether allowing additional discovery would preclude summary judgment. *Martinez v. Columbia Sportswear USA Corp.*, 553 Fed. Appx. 760, 761 (9th Cir. 2014) (unpublished)

---

[5] Jean did not file an affidavit or provide proof that the evidence she seeks exists, and therefore her Rule 56(d) motion lacks necessary procedural requisites, which alone are sufficient for denial. In its discretion, the Court will reach the merits.

(collecting cases) (internal citations omitted). The party seeking a Rule 56(d) continuance bears the burden of proffering facts sufficient to satisfy the requirements of 56(d). *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir. 1996).

Under the above test, Jean fails to meet her burden both procedurally and on the merits. First, she did not file a separate affidavit or declaration as required by the rule. Second, she fails to lay out precise justifications as to why she is unable to currently present the expert testimony and other facts essential to the motion's opposition. The procedural failings of the Rule 56(d) motion are an independent basis for the Court to deny it. *Michelman v. Lincoln Nat'l Life Ins. Co.*, 685 F.3d 887, 899 (9th Cir. 2012).

Further, even if Jean had met the procedural requirements, she would fail on the merits. She has had an opportunity to conduct discovery, *see* Dkt. 30, but has not been diligent in her approach. Jean filed this lawsuit on June 15, 2017. It is now September 2018, with the discovery deadline two short months away. *Id.* This is Jean's second motion to stay summary judgment in order to conduct discovery under Rule 56(d). Jean's first motion to stay for discovery was mooted in the beginning of April 2018. *Id.* Jean's continued and generic citation to her need to conduct discovery is unpersuasive when it appears from the record[6] that she has chosen not to conduct any discovery at all. *Conkle v. Jeong*, 73 F.3d 909, 914 (9th Cir. 1995), *cert. denied*, 519 U.S. 811 (1996) (holding

---

[6] The Court relies on defense counsel's sworn testimony that Jean has not sent a single discovery request to CHI, as Jean omits these facts entirely in her request to stay summary judgment. Dkt. 43, Declaration of Amanda Thorsvig, ¶ 5.

that a district court does not abuse its discretion by denying further discovery if the movant has failed to diligently pursue discovery in the past).

Turning to the remainder of the analysis, Jean speculates that a future, unknown-at-this-time expert would find that CHI fell below the applicable standard of care in its treatment of her late husband. But Jean does not proffer any facts to show that this evidence exists, and therefore she fails to meet her burden on a motion to stay. *See Qualls v. Blue Cross of California, Inc.*, 22 F.3d 839, 844 (9th Cir. 2004); *Conkle*, 73 F.3d at 914 (denial of stay proper when plaintiff sought additional evidence regarding alleged conversations but failed to put forth any facts to show said conversations took place).

Accordingly, the Court declines to grant Jean her requested relief and the motion to stay is denied. Summary judgment is granted in favor of CHI.

## IV. ORDER

Therefore, it is hereby **ORDERED** that CHI's motion for summary judgment (Dkt. 42) is **GRANTED**. The Clerk shall enter a **JUDGMENT** in favor of CHI and close the case.

Dated this 19th day of September, 2018.

_____
BENJAMIN H. SETTLE
United States District Judge